This is a case where the jury's central task was to decide a classic instance of a he said, she said, account of events, but two errors prejudicially tipped that balance. One bolstering what she said, the other weighing against what he said. But is that totally true? Didn't he concede that she woke up from her sleep or unconsciousness already having his having made penetration? Well, no, Your Honor, the testimony at trial, there were conflicting statements from both witnesses. That's part of the reason why this was a real credibility battle. Well, I thought he said that following up on what my colleagues, didn't he, in his statement to the investigators, confessed, if you will, that she was groggy and became aware of his being there when he was in the sexual act? That's correct. That's during the statements to the agents. But on his sworn testimony, there's a difference. Okay, so you're discounting that. Well, I'm saying that, of course, the jury had to take all of that into account in weighing it. And the same thing with the complaining witness. She made contradictory statements to the investigators that were different from the things that she said on the stand. That's why I'm saying that this was a case like in Alcantara Castillo, where this court said, bolstering effect is especially worrisome where the issue of credibility is paramount. That's what this case is. It's a real he said, she said. Well, it's a little more than that. I mean, usually the he said, she said, there's absolutely nothing to contradict. Here you've got statements by the defendant where, at least before the investigators, he in effect admits that what he was charged with doing, he did. That's true, Your Honor, but that was explained by the testimony. And I think that really the evidence here is kind of an equipoise as far as a task for the jury because they had one side that had inconsistent, contradictory statements between the investigation and on the stand. And on the same side, on the other side, it was exactly the same thing. But juries are foreign. That's correct, Your Honor, but I'm just talking about the situation that was presented here at the time that the mistrial was requested. And that's the problem. That's the thing that tipped the balance here unfairly and prejudicially. Because there was a intense emotional outburst by the key prosecution witness and the district court's inquiry was deficient. In fact, it even worsened the prejudicial effect of the emotional outburst. On that basis, we really get down then to whether we give credence to the presumption that juries follow instructions of the court. The court obviously visited with the jurors, found out how they reacted to it, got no negative reaction, gave them instructions then, gave them instructions later on that they were to pay no attention to that. Is it the defense's position that that is all of no effect and that we should order a new trial because of the outburst? Yes, Your Honor, it is. Because on the unique facts of this case, this case is not like any of the cases that the government has relied on. In fact, it was kind of frustrating because it's hard to find a lot of case laws, even in this circuit, about emotional outbursts. I referred to an ALR annotation. I discovered another one in the course of preparing for this, which was maybe a long time ago. Is it your position, counsel, that short of declaring a mistrial, there was nothing that the district court could have done differently? I think the way it played out, that was the result. Because although the court decided to make an inquiry, the inquiry itself worsened the problem. So the court's inquiry, the group inquiry, made this a bigger problem than it might have been had the court, for instance, done individual, sequestered, comprehensive inquiry of each of the jurors. What he did was a group inquiry with all the jurors sitting there. The first thing he says is he describes the very conduct that he's inquiring into from his own observations and from others. And then he asked each of the precipient jurors to describe what they saw in front of all the other jurors. So, number one, he's reinforcing and entrenching those who did see something. And if there were any jurors who didn't see anything, it's now been broadcast to every member of the jury. That is a very deficient inquiry. The court should not have done that. Well, suppose that this outburst actually occurred when she testified and she was highly emotional. Would that have been automatic grounds for mistrial? Doesn't that happen in a lot of trials, that there is great emotion demonstrated by a victim? That's true, Your Honor, especially in a case of this sort. This is the sort of case where this thing occurs frequently. But as the case law shows, it really varies on the intensity, the type, the nature of the case, the nature of the evidence, and then what the judge does in order to remedy it. There's a whole range, a whole spectrum. Well, I think you're right about that. I think that the trial judge is in the best position to judge the intensity of the outburst, how it weighs against her demeanor and emotionality as she's testifying. How are we in the position to second-guess that? Well, because I would say, Your Honor, that looking at this case again, I would think that really the unique facts of this case move this situation closer to what we would call extrinsic evidence, a jury that's been exposed to extrinsic evidence, because what they've heard was there was an outburst that very much mirrored, echoed some of the testimony of the trial. And that's actually a factor that the cases identify in the annotations, is that how much does the conduct, the outburst, reflect some of the testimony? Here it was very reflective. And so the jurors were in a situation where here we have a very close case where they're looking at some sort of conduct, but really what they're doing is they're seeing new evidence, new extrinsic evidence. In extrinsic evidence cases, the standard is dispositive here, because extrinsic evidence, if there's any reasonable possibility that the extrinsic evidence affected the verdict, then there should be a mistrial or a reversal. And in that case, it's also clear the standard of review is the government must prove beyond a reasonable doubt  So you take the position that instead of our reviewing what the district court did here as an abuse of discretion, that in fact you have the criminal standard. You have to show, from your perspective, the government has to show beyond a reasonable doubt that the outburst did not change the result. Is that your position? I believe so, Your Honor, because of the unique facts of this case. Well, everybody says every case is unique. We heard that in the previous case. Perhaps I can list some of the reasons what's so unique about this case that's so different from any of the case law that's been cited. Number one is that the intensity of this outburst is something very different from other cases. A lot of cases just talk about a witness weeping on the stand, and whether that... But counsel, Judge Settle just made the point that in a case like this, had the victim demonstrated the same outburst, the same feeling on the stand, is it your position that a mistrial would have been required? Not automatically, Your Honor. I agree that there should be a proper inquiry into the effect, but that's just the situation here. The judge here did not make a proper inquiry. The judge didn't even consult with counsel to decide how should we proceed. He just moved ahead and did this group inquiry. What's your best case to back up your point that this converted an outburst in the hallway to extrinsic evidence? We have a different standard of review. What's your best case for that? Your Honor, I haven't seen any cases that particularly link extrinsic evidence. Nor have I. Yes, and in fact, that's the problem, is the case law on these outbursts is very scanty. I'll bet you'd like a case like that. Pardon? I'll bet you'd like a case like that. I would, Your Honor, and it occurs to me, though, that it's a reasonable argument here because of the very fact that the outburst was from a key prosecution witness that the jury had to evaluate, and as it happens in this case, that behavior mirrored and kind of reenacted, as I said in the brief, reenacted some of the testimony not only of the complaining witness, but testimony of other witnesses. This was an instance where the outburst wasn't just something that happened, like where a victim's relative comes in and shouts out something to the defendant. This was a witness the jury had to evaluate, and her behavior not only mirrored what her testimony and other witnesses' testimony, but here's one key way in which this prejudiced the whole defense theory. The defense theory was that she consented and then regretted afterwards and raised a complaint. But this kind of behavior was very extreme. This conduct, her emotional outburst was very intense. It would prejudice that defense theory completely by a juror thinking someone who simply regretted having sex, that had sex and then regretted doing that, would not behave in this way. This conduct extremely bolstered her testimony that this was a violation. Was that contested, though? You're saying it bolstered the testimony. Yes. But was that contested in the trial, all the witnesses who saw her emotional outburst on the evening that this happened? Well, yes, there was testimony to emotional outbursts from the complaining witness on more than one occasion during that night, but that's the very point here, is that here was a reenactment of that very behavior that was testified to. That could have no effect on the jury except to say, huh, that must really be true. That's just like what we heard from the stand. So the problem was that this behavior, as the district judge himself said, I don't expect you're going to be able to erase this from your mind, and he's actually correct. You can't erase it, but they're going to feel like this is exactly the thing that I heard testified to and why would she be so emotional if she simply regretted having consented to sex with a stranger? Was she emotional when she was on the stand? It's hard to say. I mean, the judge and counsel talk about her being emotional on the stand, but I went through the record and maybe Learned Counsel has other citations, but all I could find was one instance where the court had to pause during the proceeding. Even though Judge Burns says we had to pause a couple of times, I didn't find any place in the record except one time where they paused. And I know what happened by talking to trial counsel, and I can make representations to the court, but reading the record, it doesn't look like there was constant stopping and pausing or anything like that, though they do mention that she was emotional while she was testifying. And no problem there. Nobody, of course, defense counsel raised no mistrial motion on the basis of that. That's to be expected, as Judge Settle said. What if she was just frustrated with the way our system operates and that her integrity was being questioned and so on? Your Honor, whatever the cause of her emotion, the important thing is how was it objectively going to have an effect on the jurors. The jurors now have heard, all of the jurors, thanks to Judge Burns' procedure of the group inquiry, all the jurors now know that there was this violent, intense outburst that required an inquiry from the court. They all heard the details of it because the judge asked all the jurors to repeat it in front of the other jurors. And now they were saying, like, she had this emotional outburst, we heard testimony about this, that could only have the effect of bolstering the credibility of her testimony, of other witnesses' testimony, of her version of events, and particularly, it would undermine the defense theory that she simply consented and regretted because nobody acts so violently. I mean, most people would not react that violently to something that they just simply regretted afterwards. This would be a way of completely undermining the defense theory. That is extremely prejudicial. This denied Mr. Oriana a fair trial going forward. The only way to solve it at this stage, especially after the judge had telegraphed all of this behavior to the jury, made it into a deficient inquiry. Do you want to save any of your time? I just want to mention one other concrete deficiency, of course, is that he did not ask each one of the percipient jurors individually to give assurance. He overlooked Judge Moore, didn't even ask him, and that's really interesting because Judge Moore later, actually turned out to be the foreman of the juror and therefore had quite a bit of influence on the deliberations. Thank you, Your Honor. I will reserve the rest of my time. Very good. Thank you. We'll hear from the government. May it please the Court. Ajay Krishnamurthy for the United States. With the Court's permission, I'd like to start by addressing the mistrial issue first. The final premise of Mr. Oriana's argument to begin with is that any outburst necessarily inured to his detriment and the victim's benefit, but under the facts and circumstances of this case, there's no logical reason that's true, and that's because the defense wasn't just that the victim consented. It was also that the victim drummed up a false complaint because she was seeking attention. That comes through in all the cross-examinations, and it also comes through in the closing arguments, ER 766 through 768, in which there's a suggestion that the victim was overly dramatic, hysterical, and was just seeking the attention of her boyfriend at the time. But it's still extrinsic evidence, is it? No, Your Honor. We don't believe that's true. As the Court has already noted, I don't believe there's any decision suggesting that an out-of-court incident like this one could be treated as extrinsic evidence. In any event, as the Court also already noted, that the idea of bolstering is a little bit hard to square with the facts of this case because there is no dispute about those outbursts at the time of the incident. Everyone agreed that the victim in this case was very emotional on the night of the assault on two occasions. How long did the wailing and the crying outside the courtroom go on? I understand that it was several minutes. I mean, I think the characterization in the briefs is largely accurate that it could be heard from outside in the hall even though it was in the bathroom. But, you know, is this— Does the government concede that there could be conduct on the part of a victim that would rise to such a level that it would impede the ability of the jury to dispassionately weigh her testimony? I agree that there may be some circumstances where that may be a concern, but I don't think this is such a case. The first is what I've already mentioned, and that this plays just as much into the defense theory as it did into the prosecutions. And the second is even if there were cases in which it did rise to that level, the district court is still in the best position to make that inquiry and make the determination of what prejudice, if any, exists. I want to just be sure I understand your earlier point. I think you said that one of the alternative theories of the defense was basically this is a very dramatic, demonstrative individual. She wanted the attention of her boyfriend, and that this was just more of the same conduct which would bolster one of the defense's theories. Is that your position? Yes, I'll be clear. They didn't make the argument that the out-of-court incident bolstered their defense, but their defense was that she was dramatic, hysterical, and wanted attention. So to the extent that the jury was considering that information at all, it seems just as logical as that it would have injured the defendant's benefit as to his detriment. There are a number of other issues raised in the briefs that weren't discussed at oral argument. I'm happy to take any questions that the court may have on any of those issues. It's my understanding that the video that was sent into the jury room has only the portions that were actually admitted to evidence, right? You know, sometimes you play a portion of a video and that portion is admitted, but the actual video contains much more than that. That's not this situation. Am I correct in understanding? That is correct. So there were four exhibits that contained videos, two from the prosecution and two from the defense. Each of those videos only contained the videos that were played for the jury. Unless the court has any other questions, I'll stop. Do either of my colleagues have a question? I think we don't. Thank you very much. And I just want to say I appreciate counsel's admission that this false accusation is the heart of the defense theory here, and that's exactly what this went into, is that this demonstration was bolstering the fact that this was not a false accusation. This is someone who was really aggrieved and very upset and emotionally distraught by what happened. That bolstered her version of events and countered it. Or possibly one of yours, at least according to what he said. Well, I appreciate his attempting to help me, but we don't believe that that is the case. I don't think in any way that this is true. Did you argue what he claims that you argued as an alternative? No, Your Honor. I believe that counsel didn't say that. They relied on the record and what happened and said, of course, that she was acting very inconsistently is what I read it as, that she was acting very inconsistently during that evening, so it's hard to tell how credible she was. Now, as far as the timing goes, Judge Nguyen asked about that. This went on for some time. There was no record on to the number of minutes, but Judge Sekey or Jury Sekey was the first juror out the door. He's the first one that heard this. Then the complaining witness was moved out of the hallway, was seen being comforted, and then was taken into the bathroom. This all took some time. Juror Moore said that he heard noise from the bathroom, which means that jurors were still in the area while this whole conduct was going on from the courtroom to the hallway to the bathroom. So this was something that jurors were exposed to for a significant amount of time. This is such a case where given all of the specific, unique cases of this, that this requires unique remedy of a mistrial because of the defective inquiry and because of the defective remedy, which I didn't get a chance to talk about, that the judge used in this case. This was a case where because of the group inquiry, it just made it worse, and the court should have just— You're over time, but let me ask my colleagues, will they have any additional questions they want to ask the counsel? Thank you very much. I know there's a whole lot more that you could say, and I'm sure very well. Even 15 minutes. Thank you both, counsel, for your argument in this case. The case of United States v. Oriana is submitted.
judges: M. Smith, Nguyen, Settle